**SIGNED THIS: July 18, 2012**

_____
**Mary P. Gorman
United States Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| In Re ) | |
| ) | Case No. 11-72700 |
| NYSSA R. WESTERMEYER, ) | |
| ) | Chapter 7 |
| Debtor. ) | |
| _____ ) | |
| ) | |
| MARIANN POGGE, Trustee, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adversary No. 12-7008 |
| ) | |
| KENNETH WESTERMEYER and ) | |
| GRETCHEN WESTERMEYER, ) | |
| ) | |
| Defendants. ) | |

## O P I N I O N

This matter is before the Court on a Motion for Summary Judgment filed by Mariann Pogge,

Chapter 7 Trustee, with respect to her Complaint to Set Aside Lien. The Complaint seeks to set aside an allegedly invalid lien on a mobile home. For the reasons set forth below, the Motion for Summary Judgment will be denied, and judgment will be entered in favor of Defendants, Kenneth and Gretchen Westermeyer.

### I. Factual and Procedural Background

All of the material facts are undisputed. Nyssa R. Westermeyer ("Debtor") filed a voluntary petition under Chapter 7 on October 20, 2011. Kenneth Westermeyer and Gretchen Westermeyer (collectively "Defendants") are the parents of the Debtor. Among the assets of Debtor's estate is a 2004 Dutch Housing mobile home (the "mobile home"). At all relevant times, the mobile home has been in the Debtor's possession.

On or about March 1, 2006, Defendants lent Debtor and her then husband, Russell J. Crenshaw, the sum of $62,834.07 to purchase the mobile home. Contemporaneously, Debtor and Mr. Crenshaw signed a promissory note for that amount payable to the Defendants. Pursuant to the terms of a subsequent dissolution of marriage decree, Russell J. Crenshaw relinquished his interest in the mobile home. Although Debtor never signed a formal security agreement granting either Defendant a lien on the mobile home, Debtor did sign an Application for Corrected Vehicle Title which listed the Defendants as lienholders. The stated reason for the request for a corrected title was "[a]dding a lien." The Application was filed with the Illinois Secretary of State on April 5, 2006. The Certificate of Title, issued April 24, 2006, lists Defendant Kenneth Westermeyer as first lienholder.[1]

---

[1] It is unclear why only Kenneth Westermeyer is shown as a lienholder on the Certificate of Title when both Kenneth and Gretchen Westermeyer were listed as lienholders on the Application. Neither party has suggested that this discrepancy should have any impact on the case outcome. The Court agrees. The end result will be the same if both Defendants have a valid lien or if only one of the Defendants has a valid lien. The Trustee prevails only if neither Defendant has a valid lien. Accordingly, this Court will continue to refer to the lien claim as that of both Defendants.

On February 8, 2012, Mariann Pogge, Chapter 7 Trustee ("Trustee"), filed her Complaint to Set Aside Lien with respect to the Defendants' purported lien against the mobile home. Defendants answered the Complaint. On June 4, 2012, Trustee filed a Motion for Summary Judgment asking that the Court find that the Application for Corrected Vehicle Title executed by the Debtor does not, as a matter of law, constitute a proper security agreement, and that, therefore, Trustee may set aside and avoid the purported lien on the mobile home. Defendants filed their Response to the Motion for Summary Judgment asking the Court to find that the Application for Corrected Vehicle Title signed by the Debtor and submitted to the Illinois Secretary of State constitutes a valid security agreement and secures the promissory note made by the Debtor in favor of the Defendants. Accordingly, the Defendants seek the entry of a judgment in their favor denying the Trustee's Complaint to Set Aside Lien. The parties have fully briefed the issues and the matter is ready for decision.

## II. Jurisdiction

This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §1334. The determination of the validity, extent, or priority of liens is a core proceeding. *See* 28 U.S.C. §157(b)(2)(K).

## III. Legal Analysis

### A. Summary Judgment Standards

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56(a), which is made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056. *See* Fed. R. Civ. P. 56; Fed. R. Bankr. P. 7056. Summary judgment is an encouraged method of resolving cases, and summary judgment should be granted when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*,

477 U.S. 317, 322-23, 327 (1986). The party moving for summary judgment has the burden of establishing that there are no material facts in dispute. *Id*. at 322-23. Even in the absence of a factual dispute, the movant must also show that the controlling substantive law demands a result in its favor. *See ANR Advance Transp. Co. v. International Brotherhood of Teamsters, Local 710*, 153 F.3d 774, 777 (7th Cir. 1998).

When one party moves for summary judgment, a court may grant summary judgment to another party. *See* Fed. R. Civ. P. 56(f)(1); *Celotex*, 477 U.S. at 326. Cross-motions for summary judgment are not required for a court to consider granting summary relief to either party to a dispute. *See* Fed. R. Civ. P. 56(f)(1).

Here, the parties have stipulated and agreed to all material facts related to their dispute. They have also identified the one discrete legal issue which they acknowledge is dispositive of the case. Each party has had the opportunity to fully brief and argue their position. Resolution of this case by summary judgment is appropriate.

### B. The Application for Corrected Vehicle Title Meets the Requirements for a Security Agreement under Illinois Law

Interests in property "are created and defined by state law." *Butner v. United States*, 440 U.S. 48, 55 (1979). Generally, in the absence of some compelling federal interest, there is no reason why property interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. *Id.* Here, the parties agree that the validity of the Defendants' lien on the mobile home must be determined by the laws of the State of Illinois. Neither party claims that there is any compelling federal interest which requires referencing any other authority to decide the dispute here.

The mobile home is a titled vehicle, and the creation of a perfected security interest in it is controlled by both the Illinois Commercial Code and the Illinois Vehicle Code. *See* 810 ILCS 5/1-

101 *et seq.*, 625 ILCS 5/1-100 *et seq*. The Illinois Commercial Code provides the requirements for the creation of an enforceable security interest. *See* 810 ILCS 5/9-203(b). The Illinois Vehicle Code provides the requirements for the perfection of the secured interest by mandating that the interest be noted on the certificate of title. *See* 625 ILCS 5/3-202. The Trustee concedes that if a security interest in favor of the Defendants was actually created, then it was also perfected because it is noted on the mobile home title. The Trustee argues, however, that a security interest was never created in the first place. Accordingly, the focus of the analysis must be on the Illinois Commercial Code requirements for the creation of a security interest.

A non-possessory security interest in personal property, such as the mobile home here, is created and becomes enforceable against a debtor and third parties in Illinois only if (1) value has been given; (2) the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party; and (3) the debtor has authenticated a security agreement that provides a description of the collateral. *See* 810 ILCS 5/9-203(b). The Trustee does not dispute that value was given or that the Debtor and her ex-husband had title to the mobile home at the time the documents were signed. The Trustee only complains that no security agreement was signed or authenticated.

The Illinois Commercial Code defines a "security agreement" as "an agreement that creates or provides for a security interest." *See* 810 ILCS 5/9-102(73). A "security interest" is "an interest in personal property or fixtures which secures payment or performance of an obligation." *See* 810 ILCS 5/1-201(35). No particular form of security agreement is provided for or required by the Illinois Commercial Code to create a security interest. And, no "magic words" are required for a security agreement to be valid and enforceable. *See Covey v. Morton Community Bank (In re Sabol)*, 337 B.R. 195, 198 (Bankr. C.D. Ill. 2006).

Only one reported Illinois case deals directly with the issue of whether the title application form required by the Illinois Secretary of State can constitute a security agreement. In *Peterson v.*

-5-

*Ziegler*, 39 Ill. App. 3d 379, 350 N.E.2d 356 (1976), the Illinois Appellate Court was faced with deciding the respective priorities between a creditor with a claimed title lien on a mobile home and the landlord of the property where the mobile home was parked who claimed a lien for back rent. The landlord raised the issue of whether the lien on the title was valid because no formal security agreement had been signed. The Appellate Court found that the application for title was sufficient to meet the statutory requirements for a security agreement because the application contained a description of the collateral and was signed by the debtor. *Id*. at 383-84, 350 N.E.2d at 360-61.

In deciding this case, this Court should attempt to predict how the Illinois Supreme Court would rule on the issue, and an Illinois Appellate Court case such as *Peterson v. Ziegler* which is directly on point should control that prediction unless there is some persuasive indication that the Illinois Supreme Court would rule differently. *See Allen v. Transamerica Ins. Co.*, 128 F.3d 462, 466 (7th Cir. 1997). Nevertheless, the Trustee argues that this Court should ignore *Peterson v. Ziegler* and should predict that the Illinois Supreme Court would find that a completed title application form cannot, as a matter of law, serve as a security agreement. The Trustee's arguments are not persuasive.

The Trustee asserts that the dissent in *Peterson v. Ziegler* "gives an indication … that the Illinois Supreme Court might decide the issue differently." But, the dissent is a scant couple of paragraphs and simply states that the dissenter sees no logic in the majority holding. The dissent provides no cogent analysis of the issues and offers no explanation of why the case should have been decided differently.

The Trustee also ignores that *Peterson v. Ziegler* was decided over thirty-five years ago. The fact that no other Illinois appellate court has published an opinion in all of those years discussing whether a completed title application form can, as a matter of law, serve as a security agreement suggests that the issue does not arise frequently and, thus, is unlikely to be considered by the Illinois Supreme Court anytime soon. Alternatively, it may also suggest that, to the extent the issue has

arisen, trial courts and litigants have found *Peterson v. Ziegler* persuasive and, therefore, the issue of whether a completed title application form can also be a security agreement has not been further challenged on appeal. The Trustee makes no convincing argument that the Illinois Supreme Court would not affirm the holding of *Peterson v. Ziegler,* if given the opportunity to do so.[2]

Finally, it should be noted that the purpose of requiring a security agreement to be in writing is twofold. First, a written security agreement eliminates disputes as to the precise collateral being pledged and, second, requiring a written security agreement operates as a statute of frauds by precluding the enforcement of oral claims. *See Bank of Am. v. Outboard Marine Corp. (In re Outboard Marine Corp.*), 300 B.R. 308, 320 (Bankr. N.D. Ill. 2003); *Sabol*, 337 B.R. at 198. Neither of those purposes is frustrated by allowing the completed title application form to stand as a security agreement. To the contrary, both of the purposes are served in finding that the completed title application form constitutes a security agreement.

The Application for Corrected Vehicle Title contains a detailed description of the mobile home and was signed by the Debtor and her ex-husband. Further, on the line where a reason must be given for the requested corrected title, the reason is clearly stated as "[a]dding a lien." This language evidences an intent to grant a security interest in the mobile home to the Defendants, who were also specifically identified on the document. The Application for Corrected Vehicle Title falls squarely within the parameters set by the Illinois Commercial Code for a document to constitute a

---

[2] After finding that a title application could be a security agreement, the *Peterson v. Ziegler* court went on to hold that the title lienholder's interest trumped the claimed landlord's lien for back rent. *See Peterson v. Ziegler*, 39 Ill. App. 3d at 385-86, 350 N.E.2d at 361-62. That second holding of the case has been criticized in other Illinois appellate court opinions. *See, e.g.*, *First State Bank of Maple Park v. De Kalb Bank*, 175 Ill. App. 3d 812, 816-17, 530 N.E.2d 544, 547-48 (1988); *Dwyer v. Cooksville Grain Co.*, 117 Ill. App. 3d 1001, 1004-05, 454 N.E.2d 357, 360 (1983). Accordingly, this Court's prediction that the Illinois Supreme Court would affirm the holding of *Peterson v. Ziegler* is expressly limited to the issue of whether a completed title application form may constitute a security agreement.

security agreement. Accordingly, this Court must find that the Defendants have a valid, perfected security interest in the mobile home.

### IV. Conclusion

The Defendants have a valid, perfected security interest in the mobile home. Accordingly, the Trustee's Motion for Summary Judgment must be denied in its entirety. But, because there are no material facts in dispute and the Defendants have established that they are entitled to relief as a matter of law, summary judgment should and will be entered in their favor.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

See written Order.

###